## MOORE v. WILKERSON, Appellant.

### Division One, June 18, 1902.

**Homestead:** SALE TO WIFE: DEBTS. The homestead is exempt from seizure or sale during the life and occupancy of the head of the family, but he, with the aid of his wife, may sell, convey, mortgage, or in any other manner dispose of it, and he does not thereby impair the right of any creditor, whether the conveyance is a mere gift or founded on fraud or made because he is insolvent. The grantee gets a good title, whether such grantee be his wife or other person. And after his death the property if deeded to his wife during his life can not be subjected to the payment of his debts, nor does she any longer have any homestead interest therein, but is the owner of the fee.

Appeal from Linn Circuit Court.—*Hon. Jno. P. Butler,* Judge.

REVERSED.

*E. R. Stephens* for appellant.

(1) The petition does not state facts which warranted the trial court in its finding for the plaintiff, either as to the facts, or its conclusions of law, under section 2135, Revised Statutes 1889; therefore, the judgment is erroneous on the record proper. (2) At the time of the conveyances,

Joel H. Wilkerson was solvent, and there was not an element
of fraud in the transfers.    The findings of facts, conclusions
of law, and the judgment of the circuit court in favor of
the plaintiff, are manifestly against the evidence.    Therefore,
the judgment should be reversed.    Carroll v. Rapid Trans.
Co., 107 Mo. 653; Powell v. Railroad, 76 Mo. 80; Ackley
v. Staehlin, 56 Mo. 558.

*A. W. Mullins* for respondent.

The gift of the property from Joel H. Wilkerson to
his wife, by means of the deeds of conveyance, was invalid
and void as to his creditors.    If not already insolvent, he was
very largely involved, with all his property incumbered ex-
cept this in question, with many thousands of dollars in-
debtedness and liabilities unsecured.    In such circumstances
he could not make a valid gift of the property to his wife
to the injury of his creditors.    Bump on Fraudulent Con-
veyances (4 Ed.), secs. 252, 253, 254; Lionberger v. Baker,
88 Mo. 447; Grocery Co. v. Monroe, 142 Mo. 165; Bohan-
nan v. Combs, 79 Mo. 305; Snyder v. Free, 114 Mo. 360.

MARSHALL, J.—In 1872 and 1874, Joel H. Wil-
kerson acquired the property in controversy, which is located
in Linneus, Missouri, and used it and occupied it as his
homestead, his wife, the defendant, and his family residing
thereon with him.    On June 12, 1890, he and his wife con-
veyed the property to his son, Charles, and on the same day
Charles conveyed it to his mother, the defendant.    The pur-
pose of these conveyances was to transfer the property from
Joel to his wife, as a gift, and to make provision for her.
After the transfer he and his wife and family continued to
occupy the property, until his death on June 19, 1891, and
Mrs. Wilkerson has occupied it ever since.    Mrs. Wilkerson
was appointed administratrix of her husband's estate and
served as such about a year, and upon her resignation, W.

W. Brinkley was appointed administrator *de bonis non,* and finally wound up the estate. He paid 72.365 per cent of the face amount of the fifth-class claims. The plaintiff herein purchased a number of the allowed fifth-class claims from the holders thereof, and after the estate was finally wound up, he instituted this suit in equity seeking to have the conveyances from Wilkerson and wife to Charles Wilkerson, and from the latter to the defendant, set aside and the land subjected to the payment of the said claims held by him. The evidence does not show that any of the debts evidenced by the claims held by the plaintiff were contracted prior to the time Wilkerson acquired the land and established his home thereon, nor is there any allegation or pretense that such debts were outstanding when the homestead was acquired. On the contrary, all the evidence goes to show that Wilkerson was a prominent man, a large landowner, a farmer and a banker, and that when the land in question was transferred to his wife he thought he was perfectly solvent and was generally reputed to be solvent. When his affairs were wound up by the probate court, however, there was a balance left unpaid on his debts. There are allegations and some evidence in the case going to show that but for certain acts of the plaintiff the estate might have paid in full all the debts, but in the view herein taken of the case it is not necessary to consider those matters.

The defendant asked the circuit court to make a special finding of facts, as provided by section 2135, Revised Statutes 1889, and that court attempted to comply therewith, and in pursuance thereto entered a combined finding of facts and decree, reciting therein that it found all the issues for the plaintiff, except as to one of the claims, and except that it found "that the defendant is entitled to homestead in the real estate" described, and then set aside and declared void the deeds aforesaid which transferred the title to the defendant, and ordered that the premises, "be sold, subject to

the homestead right of the said Judith B. Wilkerson in the real estate and premises aforesaid to continue during her natural life, for the purpose of paying said judgments of said probate court," etc. The circuit court did not find as a fact that Wilkerson was insolvent when he transferred the premises to his wife, nor that such act was fraudulent in fact or in law, nor did that court find any fact upon which it based its conclusions of law, except in the general way stated, to-wit, that it found all the issues in favor of the plaintiff. The defendant appealed.

## I.

The land was the homestead of Mr. Wilkerson from 1874 to 1890, when he transferred it to his wife. The claims now owned by the plaintiff were not in existence when the land was acquired and devoted to the homestead. Therefore, the land was exempt from seizure or sale for the payment of these claims during the life and ownership of Mr. Wilkerson. [R. S. 1889, sec. 5435; Peake v. Cameron, 102 Mo. 568; Davis v. Land, 88 Mo. 436; Bank v. Guthrey, 127 Mo. 189; Macke v. Byrd, 131 Mo. l. c. 691; Ratliff v. Graves, 132 Mo. 76; Bank v. Brown, 165 Mo. 32.] The land could not be sold during that time subject to the homestead rights of Mr. Wilkerson, and such a sale would convey no title whatever to the purchaser. [Cases supra.]

But Wilkerson, with the co-operation of his wife, had express power under the statutes of this State to convey, mortgage, alienate or in any other manner dispose of it or any part of it. [R. S. 1889, sec. 5435; R. S. 1899, sec. 3616.] And this is true whether he was solvent or insolvent, and whatever may have been his motive in so disposing of it. [Bank v. Brown, 165 Mo. 32.] For, "no fraud upon creditors can be perpetrated by any disposition the

debtor may see proper to make of his homestead. It is beyond their reach, both at law and in equity, and there can be no fraudulent disposal, of such property within the meaning of the attachment law." [Davis v. Land, 88 Mo. l. c. 439.] "There is no such thing under our laws as subjecting the fee in the land, subject to the homestead right or interest, to seizure and sale under attachment, execution, or by proceeding in equity, upon the ground that it had been fraudulently or otherwise disposed of. If it is not subject to sale under attachment and execution before such disposition, it is difficult to see how it becomes so by reason of such transfer. No creditor has any interest therein, it can not be subjected to the payment of his debt until after the homestead right expires by law, and certainly he has no right to complain of a transaction in which he has no interest." [Bank v. Guthrey, 127 Mo. l. c. 195-6.]

In the case just cited it appeared that a father acquired the land in controversy and established his home thereon. He was a widower, but his two children lived with him. He conveyed the land to his daughter upon condition that she should support him during the balance of his life. He was then eighty years old. The plaintiff afterwards obtained a judgment against him and he having no other property out of which to make the judgment, it brought a suit in equity to set aside the deed to the daughter and to subject the land to the payment of the judgment on the ground that the transfer was fraudulent as to creditors. This court, speaking through BURGESS, J., held that the conveyance was legal.

That case is in all respects similar to the case at bar except that the suit to set aside the transfer was commenced during the life of the grantor, whereas here it was not commenced until after his death. But this difference is immaterial and does not militate against the principles there decided, for it was there expressly said: "It would seem clear, from the provisions of the statute quoted, that it was

never the intention of the lawmakers that any part of, or interest in, the homestead of a housekeeper or head of a family should be, in any manner, subjected to the payment of debts contracted after its acquisition. It is only after the expiration of the homestead right, it not having been disposed of by the owner of the fee during his or her lifetime, that it, like any other real property that he may then own, becomes subject to the payment of debts." [Ibid, l. c. 195.]

In other amplifying words, under section 3616, Revised Statutes 1899, the homestead is exempt from seizure or sale during the life and occupancy of the head of the family, but he, with the aid of his wife, may convey, mortgage, alienate or in any other manner dispose of it, including the right to give it away, because he does not thereby impair any right of any creditor or of any one else to or in the property. If he disposes of it during his life, then there is no extended homestead right in the widow and children after his death, for section 3620, Revised Statutes 1899, only extends the homestead rights to the widow and children in the event the head of the family dies seized of the land. If he is not so seized at the time of his death, by reason of having disposed of the land during his life, then the widow and children have no extended right of homestead under section 3620, Revised Statutes 1899, and there is no estate or interest in the land which his creditors can subject to the payment of debts.

The statute imposes no limitation or restriction upon his right to dispose of his homestead in any manner, or upon any terms, or for any price or purpose or reason he sees fit, except only that his wife shall join in the conveyance. No other living being has any right or interest or claim that can be affected.

In the case at bar, the plaintiff has proceeded upon the mistaken theory or idea that the transfer by Wilkerson to his wife was fraudulent as to creditors, and that by setting

aside that transfer there would be an extended homestead right in the widow, under section 3620, and that the land could be sold for the payment of debts, subject to the widow's homestead rights. And the trial court also proceeded on the same lines. But this is erroneous. For the transfer from Wilkerson to his wife was valid, and being made he did not die seized of the land, there was no extended homestead right in the widow, and he did not die owning any interest in the land which could be subjected to the payment of his debts. He disposed of the fee, transferred it to his wife, during his life. By so doing he did only what the law permitted him to do, and no creditor or other person had any right to object. His wife thereby acquired a good title to the fee. Thereafter the land was hers, and not his. It ceased to be his homestead, albeit she and he continued to live upon it, and became her absolute property, free from the payment of his debts or from interference by his creditors.

It follows that the petition does not state a cause of action, the facts show no right whatever in the plaintiff to equitable or legal aid, and that the title to the land is fully and legally vested in the defendant free from all claims of her husband's creditors. Hence, the judgment of the circuit court is reversed and the bill dismissed. All concur.